# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## 5:18-cv-2-FDW
## (5:14-cr-72-RLV-DSC-9)

| | | |
|---|---|---|
| **FORTINO MALDONADO-GUILLEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ———————————————— | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I.    BACKGROUND

In February 2011, Petitioner Fortino Maldonado-Guillen, a Mexican national living in North Carolina, began obtaining cocaine from a source in Virginia. (Crim. Case No. 5:14-cr-72-RLV-DSC-9, Doc. No. 309 at p. 2 & ¶ 107: PSR; Doc. No. 189 at 2: Factual Basis). Petitioner's nephew, David Maldonado (David), would take the cocaine from his uncle's residence, redistribute it, and then pay his uncle for the drugs. (Id., Doc. No. 189 at 2). According to an unindicted co-conspirator, David delivered 30-40 kilograms of cocaine to him in Greenville, South Carolina. (Id.). Petitioner and David were both involved in a ten-kilogram cocaine transaction with another unindicted co-conspirator. (Id. at 3). Petitioner also received other distributions of cocaine. (Id. at 11, 13-14, 18). From May through July 2011, Petitioner supplied David with 60-70 kilograms of cocaine, which David then sold to Germaine Woodley, James Davis, and another customer. (Id.). David collected payment for the drugs and returned it to Petitioner. (Id. at 4).

1

David was arrested following an attempt to collect payment for cocaine that he had previously delivered. (Id.). This caused the Virginia source of supply to dry up, so David and his wife, Rosy, found another source of drugs, this time in Mexico. (Id.). The two made multiple trips to Texas to obtain the drugs and also hired drivers to do the same, transporting large quantities of cash and cocaine in the process. (Id. at 4-26). On several occasions, Petitioner would retrieve quantities of cocaine, or David would deliver the drugs to him. (Id. at 6). From June through September 2013, Petitioner regularly took two to three kilograms of cocaine from each of David and Rosy's trips. (Id. at 8).

In September 2014, one of David's hired drivers was stopped, and law enforcement officers searched his car. (Id. at 26). The car was carrying nine kilograms of cocaine in a secret compartment, which the officers did not find. (Id.). Due to concerns about surveillance, the cocaine sat in the car until the source of supply began pressuring Rosy to sell it. (Id. at 27). David went to Petitioner's house to discuss the situation with him. (Id. (citing GPS information and Title III intercepts)). Eventually, Petitioner drove David to the residence where the car with the concealed drugs was located, and David drove the car to Petitioner's home. (Id. at 28 (citing GPS evidence and Title III intercepts)). Once there, David removed the drugs from the secret compartment and gave three kilograms of the cocaine to Petitioner. (Id.).

On October 14, 2014, Petitioner met David at a gas station in Mooresville, North Carolina, to give him the proceeds from the sale of the three kilograms of cocaine. (Id. at 30). Petitioner had hidden the $85,000 in proceeds in a bucket of joint compound. (Id. (citing a telephone intercept). Petitioner later drove David to retrieve a vehicle in which David could hide the drug proceeds. (Id. at 33). After David returned to his home with the vehicle, he discovered that it had a tracking device on it, so he hid the money on his property and drove the car to a

hotel and later back to his hired driver's residence. (Id.). Petitioner picked David up from that residence and drove David to Petitioner's house. (Id. at 34). After David discovered a tracking device on his own BMW, he and Rosy made plans to leave the area. (Id.). They were arrested before they could flee. (Id.).

In November 2014, a grand jury indicted Petitioner and 12 other co-defendants. (Id., Doc. No. 59: Indictment). The grand jury charged Petitioner with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846 (Count One), and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count Two). Although this Court appointed counsel to represent Petitioner, appointed counsel withdrew after Petitioner retained Cynthia Everson and Richard Diener to act as co-counsel. (Id., Doc. Nos. 82, 85-86; Doc. Entry of Jan. 16, 2015).

In July 2015, Petitioner agreed to plead guilty to Counts One and Two. (Id., Doc. No. 188 at ¶ 1: Plea Agrmt.). As part of the plea agreement, Petitioner stipulated that he had read and understood the factual basis and that it could be used without objection to determine his sentence. (Id. at ¶ 13). The factual basis stated that 450 kilograms of cocaine, which included both cocaine and the equivalent quantity from cocaine proceeds, was reasonably foreseeable to him. (Id., Doc. No. 189 at 35: Factual Basis). Petitioner agreed that he understood that Count One had a minimum term of 10 years of imprisonment and a maximum term of life and that Count Two carried a maximum term of 20 years of imprisonment. (Id., Doc. No. 188 at ¶ 3). The parties agreed to recommend that the amount of cocaine involved in the offense was 450 kilograms, that Petitioner's guilty plea was timely made, that either party could seek a departure or variance from the guidelines range, and that the career offender enhancement might apply. (Id. at ¶ 6).

3

Pursuant to the plea agreement, Petitioner waived the right to challenge his conviction or sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at ¶ 18). He also agreed that pleading guilty might impact his immigration status and that he wanted "to plead guilty regardless, even if the consequence [was] the defendant's automatic removal from the United States." (Id. at ¶ 21). The plea agreement stated that no other "agreements, representations, or understandings" had been made between the parties. (Id. at ¶ 27).

At the plea hearing, the magistrate judge explained the charges and applicable penalties to Petitioner. (Id., Doc. No. 425 at 4-7: Plea Tr.). Petitioner testified that he understood. (Id. at 7). Petitioner affirmed that he had been over the plea agreement with his attorney and understood and agreed to its terms and that he was guilty of the charges against him. (Id. at 11, 14). Petitioner also testified that he had read, understood, and agreed with the terms of the factual basis. (Id. at 15). The magistrate judge specifically questioned Petitioner about the immigration consequences of his plea, inquiring whether he understood that his guilty plea "could result in deportation from the country?" (Id. at 7-8). Petitioner answered, "Yes." (Id. at 8). Petitioner agreed that he understood that he could not withdraw his guilty plea if the sentence imposed was more severe than he expected. (Id. at 9). He testified that no one had threatened, intimidated, or forced him to plead guilty, and that no outside promises of leniency or a light sentence had been made to induce his guilty plea. (Id. at 15-16). Finally, Petitioner stated that he had had sufficient time to discuss any possible defenses with his attorney, that he was satisfied with her services, and that he "thank[ed] her very much for her help." (Id. at 16). The magistrate judge found that Petitioner's guilty plea was made knowingly and voluntarily and accepted it. (Id. at 18).

In October 2015, Petitioner wrote a letter to the Court requesting appointment of counsel because he could no longer afford to pay Everson as his attorney. (Id., Doc. No. 259). Everson responded, stating that she had offered to continue to represent Petitioner even though he could not afford to pay her, requesting only that he pay for or provide an interpreter. (Id., Doc. No. 264). After a hearing, new counsel, Haakon Thorsen, was appointed to represent Petitioner in November 2015. (Doc. Entries of Oct. 30, 2015, and Nov. 12, 2015).

In early 2016, the probation officer issued a presentence report (PSR), recommending that Petitioner's base offense level was 40 based on the quantity of drugs involved in the offense, as well as his maintaining a premises for the purpose of manufacturing or distributing a controlled substance, and that he should receive a two-level enhancement for his money-laundering conviction. (Id., Doc. No. 297 at ¶¶ 80-81). Allowing a three-level reduction for acceptance of responsibility, his total offense level was 39. (Id. at ¶¶ 88-90). The probation officer determined that Petitioner's criminal history category was II and that his advisory guidelines range was 292 to 365 months of imprisonment. (Id. at ¶¶ 100-02, 120).

Petitioner objected to the PSR, arguing that the two-level enhancement for maintaining a premises should not apply, that his criminal history computation substantially overstated the seriousness of his criminal history and the likelihood that he would commit additional crimes, and that he should be given the benefit of the safety valve. (Id., Doc. No. 307: Objection to PSR).

In February 2016, Thorsen requested a hearing on the status of counsel and the status of Petitioner's guilty plea. (Id., Doc. No. 322). Counsel stated that Petitioner was claiming that he had been "tricked" into pleading guilty and was disavowing the factual basis. (Id. at 2). However, Petitioner had not asked counsel to move to withdraw his guilty plea. (Id.). This

Court held a hearing and determined that Petitioner was claiming that Thorsen was not spending

enough time with him going over the evidence.  (Id., Doc. No. 323 at 1).  Thorsen indicated that

he had made three or four trips to meet with Petitioner at the Caldwell County Jail, that he had

reviewed the evidence with him, and that he had filed objections to the PSR.  (Id. at 1).  This

Court denied Petitioner's request to remove Thorsen as counsel, finding that he had not

established good cause to appoint new counsel.  (Id. at 2).

In March 2016, Petitioner filed a motion to withdraw his guilty plea.  (Id., Doc. No. 331).

Thorsen indicated that he had reviewed the discovery and had advised Petitioner that if he

proceeded to trial, he would be convicted.  (Id. at 2).  Petitioner indicated that his prior attorneys

also had advised him of this.  (Id.).  Petitioner asserted that Everson told him that he would get a

6- or 8-year sentence if he pleaded guilty, but that if he went to trial, his sentence would be at

least 30 years.  (Id. at 2; Doc. No. 333-1 at 1).  Petitioner stated that he was not guilty of the

crimes to which he had pleaded guilty, that Everson had told him how to answer the questions at

the plea hearing, that some of his answers at the hearing were not true, that he had not seen or

discussed the factual basis before his plea hearing, and that if he had known that his sentence

would be so long, he would have gone to trial.  (Id., Doc. No. 331 at 2; Doc. No. 331-1 at 1-2).

In April 2016, this Court held a sentencing hearing.  (Id., Doc. No. 426).  At this hearing,

Petitioner withdrew his motion to withdraw his plea.  (Id. at 3-4).  Petitioner told this Court that

he understood the charges against him, that he was "fully satisfied" with the services of his

attorney, that his guilty plea was made freely and voluntarily, and that he had committed the

offenses with which he was charged.  (Id. at 2-3).  This Court affirmed the acceptance of the

guilty plea and found Petitioner guilty of the charges.  (Id. at 3).  Petitioner argued that he had

only stored cocaine at his house for a brief time during the conspiracy, when his nephew was

coming to pick up the drugs for distribution.  (Id. at 4-5).  Based on this, he argued that he should

not receive a two-level enhancement for maintaining a premises for manufacturing or

distributing cocaine.  (Id.).  This Court overruled the objection and found that Petitioner's total

offense level was 39 and that his criminal history category was II.  (Id. at 6, 11).

Petitioner argued that his main employment was in construction and that he should not be

found responsible for 450 kilograms of cocaine.  (Id. at 12).  He asserted that in Mexico four of

his brothers had been murdered for not participating in the drug trade and that he felt pressured

by a gang to participate in the conspiracy.  (Id.).  Counsel noted that Petitioner was not going to

be a future risk "because he expects to be deported after his sentence is served."  (Id. at 12-13).

He sought a downward variance, arguing that he was 47 years old and would be too old to likely

participate in a similar venture after he was released.  (Id. at 13).  The Court granted a

continuance to allow Petitioner to confer with his counsel and the Government to determine

whether he wanted to fully debrief to allow the possibility of obtaining a reduction under the

safety valve.  (Id. at 16-18).

At the continuation of the sentencing hearing two months later, the parties informed the

Court that Petitioner had not agreed to debrief the Government.  (Id., Doc. No. 427 at 7-8).

Petitioner indicated he was unhappy with his attorney because he had not been able to spend as

much time going over the evidence as Petitioner would have liked, and he had told Petitioner that

he would receive only a 6- to 8-year sentence if he pleaded guilty.  (Id. at 3-5).  Thorsen stated

that he had reviewed the evidence with Petitioner and discussed his options on seven to eight

occasions.  (Id. at 6).  Petitioner admitted that he was "not pretending to say that I'm innocent."

(Id. at 4).  This Court found that Petitioner had not stated any basis for withdrawing his plea or

obtaining new counsel and denied any request for this relief.  (Id. at 19).

Defense counsel argued that Petitioner had severe arthritis and was in poor health[1] and that he would not present a future danger to the community in light of his lack of a prior record, as well as because "he will be deported after" he serves his sentence. (Id. at 10). He also contended that a downward variance was appropriate because Petitioner's family had come to the United States to avoid being killed by drug traffickers in Mexico and to avoid a sentencing disparity between Petitioner and his co-defendants (even though others had cooperated with the Government). (Id. at 10, 13). Petitioner apologized for making a mistake, but asserted that the only thing that he was guilty of was bringing $85,000 to David. (Id. at 11). The Court varied downward by two levels in light of Petitioner's age and poor health and sentenced him to 235 months of imprisonment. (Id. at 16-17). The Court also noted that, upon Petitioner's release from prison, he would be surrendered to immigration officials for deportation. (Id. at 17).

Petitioner appealed. United States v. Maldonado-Guillen, 683 F. App'x 198 (4th Cir. 2017). His counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and Petitioner filed a pro se supplemental brief, asserting that this Court should have substituted counsel at sentencing and should have permitted him to withdraw his guilty plea. Maldonado-Guillen, 683 F. App'x at 199. The Fourth Circuit held that this Court had substantially complied with Federal Rule of Criminal Procedure 11 during the plea hearing and that Petitioner's guilty plea was made knowingly and voluntarily and was supported by an adequate factual basis. Id. at 199, 202. The Fourth Circuit determined that Petitioner had waived his right to withdraw his guilty plea by pleading guilty and withdrawing the motion to withdraw his plea. Id. at 200. The Court also noted that, given that it was only after the PSR was filed that Petitioner asserted that

---

[1] Petitioner claimed to be a construction laborer, and his physical condition was described as "good" in the PSR. (Id., Doc. No. 309 at ¶¶ 110, 115).

he misunderstood the consequences of his plea and the factual basis, Petitioner was more concerned with his sentence, than the plea.  Id. at 202.  The Fourth Circuit also upheld Petitioner's sentence.  Id. at 200.

Petitioner timely filed the present motion to vacate, arguing that he received ineffective assistance of counsel during the plea proceedings and at sentencing.  (Civ. Doc. No. 1 at 4-6).  He seeks to set aside his guilty plea and to proceed to trial.  (Id. at 12).  The Government filed its response on February 23, 2018.  (Doc. No. 3).

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

To prevail on a theory of ineffective assistance of counsel, Petitioner must establish that his attorney's performance fell below an objective standard of reasonableness, judged "from counsel's perspective at the time."  Strickland v. Washington, 466 U.S. 668, 689 (1984).  He must also establish prejudice in the form of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Because Petitioner pleaded guilty, to establish prejudice affecting his conviction, he must demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." Lee v. United States, 137 S. Ct. 1958, 1964 (2017).

In evaluating claims under Section 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). As the Fourth Circuit has made clear, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," and Section 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005); see Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000) (holding a defendant is bound by his representations during the plea colloquy "[a]bsent clear and convincing evidence to the contrary").

**A. Petitioner's claim of ineffective assistance with respect to his guilty plea.**

Petitioner first argues that counsel's[2] advice prejudiced his decision to accept the guilty plea. (Civ. Doc. No. 1-1 at 6). He asserts that he wanted to proceed to trial, but that counsel "refused because he 'wasn't being paid enough' and the Court had limited his time and resources to do so." (Civ. Doc. No. 1 at 5). He also contends that counsel did not advise him that he would be subject to automatic deportation if he pleaded guilty,[3] but, rather, told him that if he pleaded guilty in a timely manner he would still be able to contest removal from the United

---

[2]  Petitioner does not identify Everson as one of his attorneys, and he only refers to counsel as "he." (Doc. No. 1 at 10; Doc. No. 1-1 at 5).

[3]  See Padilla v. Kentucky, 559 U.S. 356, 369 (2010) (recognizing that counsel should correctly advise a defendant of the deportation consequences of a conviction where those consequences are clear).

States. (Id. at 6, 8-9). Petitioner concedes, however, that this Court "explained the consequences of pleading guilty" and that he understood the potential sentence that he faced. (Civ. Doc. No. 1-1 at 6). The Fourth Circuit previously determined that Petitioner's guilty plea was knowingly and voluntarily made, Maldonado-Guillen, 683 F. App'x at 200, and Petitioner's implicit contention that his guilty plea was involuntary due to counsel's advice is without merit.

Although Petitioner contends that he wanted to proceed to trial, this contention is belied by his multiple representations to the contrary. Petitioner admitted in signing the plea agreement and at the plea hearing that he wanted to plead guilty and to waive his right to a trial. At sentencing, he again admitted that he had committed the offenses with which he was charged and that he was not claiming that he was innocent. (Crim. Case No. 5:14-cr-72-RLV-DSC-9, Doc. Nos. 426 at 2-3; Doc. No. 427 at 4). Moreover, Petitioner withdrew the motion to withdraw his guilty plea, thereby reaffirming his decision not to proceed to trial. See (Id., Doc. No. 426 at 3-4). His contention that counsel did not want to proceed to trial because of limited resources from the Court is misplaced because he had retained counsel when he pleaded guilty, and he admitted at the plea hearing that he was satisfied with his attorney's services and even thanked her for her help. (Id., Doc. No. 425 at 16: Plea Tr.).

Additionally, Petitioner has presented no contemporaneous evidence that any allegedly deficient advice regarding the deportation consequences of his guilty plea affected his decision to plead guilty. This Court advised Petitioner at the plea hearing that his plea could result in deportation, and his counsel stated several times during the district court proceedings that Petitioner would be deported. For example, during the first sentencing hearing, Thorsen argued that Petitioner would not pose a future threat "because he expects to be deported after his sentence is served." (Id., Doc. No. 426 at 12-13). This indicates that counsel had advised

Petitioner of the deportation consequences of his convictions and that Petitioner expected these consequences. These statements and Petitioner's failure to raise the issue of deportation before this Court or on appeal, despite having attempted to challenge his guilty plea, shows that any advice regarding deportation consequences did not affect his decision to plead guilty. See Lee, 137 S. Ct. at 1967 (holding that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies"); United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) (recognizing that a defendant's failure to take action after learning of an issue provides evidence that it would not have affected his plea), cert. denied, 137 S. Ct. 77 (2016). Rather, as the Fourth Circuit found, the evidence shows that Petitioner's main concern was with the length of his sentence. Maldonado-Guillen, 683 F. App'x at 201-02.

Petitioner also cannot show prejudice because it would not have been objectively reasonable for him to proceed to trial given the extensive evidence against him, which included not just evidence from cooperating co-defendants, but also evidence from surveillance and wiretaps. See Fugit, 703 F.3d at 260. This evidence was ample enough that both Thorsen and Petitioner's prior counsel advised him that he would be convicted if he proceeded to trial. See (Crim. Case No. 5:14-cr-72-RLV-DSC-9, Doc. No. 331 at 2). Moreover, by pleading guilty, Petitioner received credit for acceptance of responsibility and was able to argue effectively for a lower sentence. See Santiago, 632 F. App'x at 774 (holding that "when the Government's case is strong, a defendant faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial").

Because Petitioner's claims of ineffective assistance with respect to his guilty plea contradict his sworn testimony at the plea hearing, as well as his decision to withdraw the motion

to withdraw his guilty plea, and he cannot show prejudice, these claims are denied.  See

Lemaster, 403 F.3d at 221-22.

**B. Petitioner's claim that his attorney failed to properly investigate his case.**

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the

proceedings conducted prior to entry of the plea."  United States v. Moussaoui, 591 F.3d 263,

279 (4th Cir. 2010).  Thus, a knowing and voluntary guilty plea "forecloses federal collateral

review" of prior constitutional deprivations, including allegations of ineffective assistance of

counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956

F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir.

1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d

677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant."  Burket v. Angelone, 208

F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

As shown above, and as determined by the Fourth Circuit, Petitioner knowingly and

voluntarily pleaded guilty.  His assertion that counsel was deficient for not discovering that the

co-defendants were lying does not establish that he did not know or understand the consequences

of pleading guilty.  Accordingly, he has waived his challenge to his attorney's alleged failure to

properly investigate the case.  See Fields, 956 F.2d at 1294-96.

Even if Petitioner had not waived his claim of inadequate investigation, this claim is

without merit.  To support an ineffective assistance claim based on the failure to investigate, a

petitioner must present specific information to show what favorable evidence the investigation

would have produced.  See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996).  If there is

"no reasonable probability that a possible defense would have succeeded at trial," counsel's

failure to investigate such a defense is not prejudicial.  See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).

Petitioner contends that his attorney claimed that he did not have the resources to properly investigate the case and was not being paid enough because the Court had appointed him.  (Civ. Doc. No. 1-1 at 11).  He asserts that an adequate investigation would have shown that "all statements made by co-defendants during their debriefings were false," that Petitioner's involvement in the offense was limited to transporting $85,000 in cash; that he was a construction worker and lived within his means; that while in the United States he had never knowingly possessed, transported, or sold drugs; and that his co-defendants received favorable treatment in exchange for their "false" statements.  (Id.).  He argues that counsel should have objected to the unspecified false statements or moved to suppress them.  (Id. at 12).  Petitioner also contends that counsel told the Government that Petitioner's home served as a stash house for money and drugs, even though this was not true.  (Id.).

Petitioner has not shown deficient performance.  When Petitioner pleaded guilty, retained counsel was representing him.  Thus, his assertion that counsel did not have enough resources to investigate because he was court-appointed is without merit.  Additionally, Petitioner testified at the plea hearing that he had had an adequate opportunity to discuss any possible defenses with his attorney.  (Id., Doc. No. 425 at 16).  Petitioner also has not presented any specific evidence to show what he alleges additional investigation would have revealed, relying instead only on unsupported conclusory allegations.  Such allegations are insufficient to establish deficient performance.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss Section 2255 claims based on vague and conclusory allegations).  Additionally, Petitioner has not shown that, before his plea, his counsel informed the Government that

14

Petitioner's residence was used to store money and drugs.[4]  However, even if counsel had done

this, as shown by the evidence in the factual basis and as found by the probation officer and this

Court, such a representation would have been true.

Petitioner also has not established prejudice.  Petitioner does not explain how he came by

the $85,000 in cash, nor does he identify specifically who made false statements, what the false

statements were, what evidence shows that the statements were false, or how this shows that he

was not guilty of the offenses to which he admitted guilt.  Both Thorsen and Petitioner's prior

counsel advised him that he would be convicted if he proceeded to trial.  See (Crim. Case No.

5:14-cr-72-RLV-DSC-9, Doc. No. 331 at 2).  Additionally, although Petitioner asserted in his

motion to withdraw that he was not guilty of the offenses, he withdrew this motion at the

sentencing hearing and again affirmed to this Court that he understood the charges against him

and that he had committed those offenses.  (Id., Doc. No. 426 at 2-3).  Finally, given the number

of people involved in the conspiracy, as well as the GPS, wiretap, and other surveillance

evidence, it would not have been objectively reasonable for Petitioner to proceed to trial based

on a defense that everybody else was lying.  See Fugit, 703 F.3d at 260.  Accordingly, this claim

of ineffective assistance is denied.

**C. Petitioner's claim of ineffective assistance of counsel at sentencing.**

To establish ineffective assistance of counsel at sentencing, a petitioner must show that

but for counsel's deficient performance, there is a reasonable probability that he would have

received a lower sentence.  See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999).

Petitioner argues that his attorney provided ineffective assistance at sentencing because he did

---

[4]  At sentencing, counsel objected to application of the two-level enhancement for maintaining a premises for distributing drugs, but admitted that Petitioner had stored drugs at his home for a brief period of time until David picked them up for distribution.

not advocate for a sentence that would still allow Petitioner to contest removal from the United

States. (Civ. Doc. No. 1-1 at 9). Essentially, he asserts that counsel should have sought a

sentence of less than 180 days for his cocaine-trafficking conspiracy and money laundering

offenses. See 8 U.S.C. § 1101(f)(7) (sentences over 180 days exclude an alien from showing

good moral character). Again seeking to disavow his representations to this Court, Petitioner

argues that he stated that he understood the PSR based on counsel's assurance that removal

would not apply to his conviction and that, due to his ties to the community and the extended

family that he had living in the United States, he would not be deported "regardless [of] what the

plea agreement stated."[5] (Civ. Doc. No. 1-1 at 9).

Petitioner's contention that he stated that he understood the PSR based on a

misrepresentation by counsel as to immigration consequences is misplaced. With respect to

deportation, the PSR stated only that "[i]f the defendant is not a citizen of the United States, a

guilty plea or conviction may result in deportation or removal from the United States." (Crim.

Case No. 5:14-cr-72-RLV-DSC-9, Doc. No. 309 at ¶ 5). Petitioner had previously been advised

of the same consequences during the plea proceedings. Therefore, even if counsel had made the

alleged statement, it would not have impacted Petitioner's understanding of the PSR.

Counsel was also not deficient for not arguing for a sentence of less than six months,

where the mandatory minimum sentence was ten years. Thorsen did argue for application of the

safety-valve, which would have allowed Petitioner to be sentenced below the mandatory

minimum. However, Petitioner refused to cooperate with the Government, which was a

necessary pre-requisite to application of the safety-valve. See U.S.S.G. § 5C1.2(a)(5). Despite

---

[5] This allegation contradicts Petitioner's testimony during the plea hearing that his decision to
plead guilty was not the result of any promises outside of the plea agreement. (Crim. Case No.
5:14-cr-72-RLV-DSC-9, Doc. No. 425 at 15-16).

Petitioner's lack of cooperation, Thorsen effectively argued that Petitioner should receive a sentence below the guidelines range, citing his age, his health, his family history, a potential sentencing disparity, his lack of a prior record, and the fact that he would not pose a future risk to the community in light of his deportation. In light of counsel's arguments, this Court granted a two-level downward variance and sentenced Petitioner to 235 months of imprisonment, well below the advisory guidelines range of 292 to 365 months. Given these circumstances, Petitioner cannot show that counsel's performance at sentencing was deficient, or that, but for counsel's conduct, there is a reasonable probability that he would have received a lower sentence. See Royal, 188 F.3d at 249. Accordingly, this claim of ineffective assistance is denied.

### D. Petitioner's Claim of Cumulative Error.

Finally, Petitioner argues that the combined effects of counsel's errors deprived him of effective representation and resulted in a miscarriage of justice. (Civ. Doc. No. 1-1 at 13). This argument is baseless. Petitioner has not shown that any of his claims of ineffective assistance have merit, and, even if he could, claims of ineffective assistance of counsel must be evaluated individually, not cumulatively. Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).

In sum, Petitioner fails to show ineffective assistance of counsel and his motion to vacate will, therefore, be denied and dismissed.

### IV.    CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

17

1.     Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2.     **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 5, 2018

Frank D. Whitney
Chief United States District Judge

18